UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| **VALERIE LYNN MOORE,**<br>     **Plaintiff,**<br><br>V.<br><br>**CAROLYN W. COLVIN,**<br>   **Acting Commissioner of Social Security,**<br>     **Defendant.** | **CIVIL ACTION NO. 5:14-CV-12-KKC**<br><br><br><u>**OPINION AND ORDER**</u> |

    The plaintiff Valerie Lynn Moore brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her claim for Disability Insurance Benefits and Supplemental Security Income. The Court, having reviewed the record, will affirm the Commissioner's decision.

### FACTUAL AND PROCEDURAL BACKGROUND

    An Administrative Law Judge ("ALJ") denied Moore's claim (Administrative Record ("AR") at 10) and Moore now asks this Court to review that decision. This Court's review of the Commissioner's decision is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir.2009).

    In denying Moore's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act (the "Act"). 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

    At step one, the ALJ determined that the claimant has not engaged in substantial gainful activity since July 8, 2008, the alleged onset date. (AR at 12).

    At step two, the ALJ determined that Moore suffers from the following severe impairments: degenerative disc disease of the cervical spine, left carpal tunnel syndrome, left shoulder

impairment, obesity, borderline intellectual functioning, and panic disorder with agoraphobia. (AR at 12.)

At step three, the ALJ found the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR at 13.)

The ALJ determined that Moore has the residual functional capacity (RFC) to perform "light" work as defined by 20 C.F.R. § 404.1567(b) and 416.967(b) with the following limitations:

> The claimant can lift/carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk a total of 6 hours in an 8-hour workday, and she can sit a total of 6 hours in an 8-hour workday. She can stoop, kneel, crouch, or climb stairs/ramps no more than frequently. She should never climb ladders, ropes or scaffolds. She may only occasionally crawl. She may use her non-dominant left upper extremity no more than frequently for handling or fingering. The claimant should avoid concentrated exposure to full body vibration. Because of body habitus, she should avoid all hazards such as unprotected heights and dangerous machinery. The claimant also suffers with mental impairments, but she is able to: understand and remember simply work instructions and procedures requiring brief initial learning periods; sustain concentration, effort and pace for simple tasks requiring little independent judgment and involving minimal variations, and doing so at requisite schedules of work and breaks; interact as frequently as needed with coworkers and supervisors sufficiently for task completion, while having no more than occasional interaction with the public; and adapt adequately to situational conditions and changes with reasonable support and structure.

(AR at 16-17.)

At step four, the ALJ found that Moore is able to perform her past relevant work as a sedentary press operator and as a motel cleaner/housekeeper. (AR at 24.)

At step five, the ALJ determined that, given the described RFC, Moore could also perform jobs other than her past relevant work that exist in significant numbers in the national economy and, thus, she was not disabled. (AR at 25-26.)

## ANALYSIS

Moore first argues that the ALJ erred by failing to give controlling weight to the opinion of her treating physician, Dr. Sandra Dionisio. Moore points out that, by letter dated September 12, 2008, Dr. Dionisio stated that Moore "has chronic neck and arm pain both from carpal tunnel and also herniated cervical disc." (AR at 370.)  Dr. Dionisio further opined that Moore could not work "because of the pain."  (AR at 370.)

ALJs must "evaluate every medical opinion [they] receive" about a claimant and give "controlling weight" to opinions from treating sources "[i]f [they] find that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c), (c)(2). An ALJ must provide "good reasons" for not giving a treating physician's opinion controlling weight. *Id*.

The ALJ is not required to give any weight, however, to Dr. Dionisio's conclusion that Moore cannot work because of pain. This is because a statement by a medical source that the claimant is "unable to work" is an opinion on an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d).

As to Dr. Dionisio's description of Moore's pain as "chronic," the ALJ determined it was not adequately supported by objective medical evidence (AR at 23.) The ALJ noted that the opinion was supported by the claimant's subjective indications and statements but that Dr. Dionisio's exam revealed "no acute swelling and redness" and "no [upper extremity] muscle atrophy." In the medical notes on the date of the letter, Dr. Dionisio noted that Moore's chief complaint was that she "needs a statement saying that she can't work." (AR at 369.) Further, Dr. Dionisio described Moore's carpal tunnel syndrome, herniated disc, and neck pain as "stable." (AR at 369.)

The only evidence that Moore cites in support of Dr. Dionisio's statement that her pain was "chronic" is an EMG and MRI. The EMG, however, found results consistent with "mild/early" carpal tunnel syndrome (AR at 364) and the MRI revealed a "small central herniated disc protrusion which touches the cord in the midline. There is no spinal stenosis and the neural foramina are normal." (AR at 351.) While the EMG and MRI support a finding that Moore experienced mild carpal tunnel syndrome and a small central herniated disc protrusion, they do not support Dr. Dionisio's statement that both conditions had caused Moore to suffer "chronic" neck and arm pain.

The ALJ's determination that Dr. Dionisio's statements in the September 12, 2008 letter were not entitled to controlling weight is supported by substantial evidence and the ALJ gave good reasons for discounting the statements. The ALJ based his RFC instead on the opinions of Drs. Amanda Lange and James Ramsey. (AR at 379-85, 432-39.)

Next Moore argues that the ALJ erred in failing to include certain mental conditions in the hypothetical presented to the vocational expert. Moore argues that the ALJ should have included the mental conditions included in the opinion of Dr. Christi Hundley, a licensed clinical psychologist. At the hearing, the ALJ posed a hypothetical to the vocational expert that included the following mental conditions:

> [S]he would be able to understand . . . and remember simple work instructions and procedures, requiring brief initial learning periods; sustained concentration effort and pace for simple tasks requiring little independent judgment and minimal variations; and doing so at a regular residual – with normal breaks, be able to interact frequently, as needed with co-workers and supervisors. . .yet requiring no more than occasional interaction with the public; be able to adapt adequately to situational conditions and changes with reasonable support and structure.

(AR at 70.)

This assessment is consistent with Dr. Hundley's opinion. Dr. Hundley found that Moore's ability to "understand and remember simple instruction is guarded and her ability to maintain

attention and concentration is fair." (AR at 377.) Dr. Hundley opined that Moore's "ability to interact appropriately in a work setting is guarded to poor and her ability to handles the stresses typically associated with a work environment is guarded." (AR at 377.)

Dr. Hundley did not elaborate on what "guarded," "fair," or "poor" signify in the context of her report. The ALJ's hypothetical noted that, with regard to Moore's ability to understand and follow simple instruction, she would require "brief initial learning periods." As to Moore's ability to concentrate, the ALJ's hypothetical indicated that Moore would have such an ability with regard to "simple tasks requiring little independent judgment and minimal variations." As to Moore's ability to interact in a work setting, the ALJ's hypothetical required "normal breaks" with regard to interactions with co-workers and supervisors and "no more than occasional interaction with the public." Further, the ALJ's hypothetical required "reasonable support and structure" so that Moore could adapt to changing conditions at the workplace. None of this is inconsistent with Dr. Hundley's findings.

Dr. Hundley reported that Moore scored a 56 on the Global Assessment of Functioning which indicates moderate symptoms or difficulties in social or occupational functioning. As the ALJ noted, multiple other assessments in the record specifically assessed Moore's mental ability to perform work-related activities and found that Moore was not significantly limited or only moderately limited. (AR at 408, 414, 428.)

The ALJ's hypothetical to the vocational expert is supported by substantial evidence in the record, including the conclusions of Dr. Dan Vandivier and Ilze Sillers. (AR at 410, 430.)

Finally, Moore argues that the ALJ erred because it failed to comply with the directives of the Social Security Appeals Council. For background, Moore's disability claim had previously been denied by a different ALJ. The Appeals Council remanded the matter finding that the first ALJ's

5

decision did not contain an adequate evaluation of Dr. Dionisio's opinion. (AR at 99.) As discussed above, the second ALJ adequately addressed Dr. Dionisio's opinion.

The Appeals Council also directed that, on remand, the ALJ must "[e]valuate and compare the claimant's past relevant work with the claimant's functional limitations or residual functional capacity to determine whether the claimant has the capacity to meet the physical and mental demands of jobs the claimant has performed in the past." (AR at 100.) This time around, the ALJ considered the entire record in determining Moore's RFC and then appropriately consulted a vocational expert to determine whether Moore could meet the physical and mental demands of her past work as a sedentary press operator and motel cleaner/housekeeper.

For all these reasons, **IT IS HEREBY ORDERED** that:

1. The plaintiff's motion for summary judgment (DE 11) is **DENIED**;

2. The defendant's motion for summary judgment (DE 12) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment will be entered contemporaneously with this order.

Dated January 30, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY